<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE PEER GROUP FOR PLASTIC SURGERY, PA<br><br>    Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., *et al.*,<br><br>    Defendants. | Case No. 2:23-cv-02073 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant United Healthcare Services, Inc. ("Defendant"). (ECF No. 22.) Plaintiff The Peer Group for Plastic Surgery, PA ("Plaintiff") filed an opposition (ECF No. 24), and Defendant filed a reply (ECF No. 25). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED**.

I.    **BACKGROUND**

   A.    **Factual Background**

For purposes of the motion to dismiss, the Court accepts the factual allegations in the Second Amended Complaint (ECF No. 11) as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

This matter arises from Defendant's alleged underpayment of Plaintiff's claims for benefits submitted on behalf of Plaintiff's patients, C.S., D.S., C.A., and K.M. (collectively, the "Patients"). (*See generally* ECF No. 11.) Defendant is an insurance provider that insured the Patients at all relevant times. (*See id.*) Plaintiff is a licensed medical practice that specializes in post-breast cancer plastic surgery reconstruction and seeks payment for surgeries performed on the Patients at its facilities (as an out-of-network provider) pursuant to the Patients' respective health benefit plans (collectively, the "Plans"), which are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (*See generally id.*; Decl. of Mabel S. Fairley in Supp. of Def.'s Mot. to Dismiss (ECF No. 22-1 ("Fairley Decl.")) ¶¶ 3–4, 6–7, 9, 11, Exs. 1, 3, 6.)[1]

---

[1] Even though Plaintiff does not allege the Plans are governed by ERISA (*see generally* ECF No. 11), the Court recognizes the summary plan descriptions (the "SPD") of C.S., D.S., and K.M.'s health benefit plans, which Defendant provides in support of its motion, establish the aforementioned health benefit plans are governed by ERISA. *See Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 262 F. Supp. 3d 105, 110 (D.N.J. 2017) (holding that "the very foundation" of plaintiff's claim for healthcare benefits is the health benefit plan governed by ERISA, therefore defendants "permissibly attached" the health benefit plan's documents to their motion to dismiss); *see also Hishmeh v. Aetna Health Inc.*, Civ. A. No. 17-cv-5736, 2017 WL 4271449, at *2 (E.D.N.Y. Sept. 25, 2017) (holding that the court "will consider [the] health care plan documents" because they are "integral to the complaint" in a lawsuit brought by an out-of-network medical provider seeking reimbursement for medical services rendered). In its moving brief, Defendant asserts C.A.'s health benefit plan is also governed by ERISA (ECF No. 22-12 at 7), but notes "C.A. is a participant in/beneficiary of the 61st Street Service Corporation Welfare Benefit Plan [("61st Plan")]. Defendant is still in the process of locating the [SPD] for the self-funded [61st Plan]. . . . Defendant will supplement its motion papers to include a copy of the applicable SPD once it is located" (*id.* at 7 n.3). As of the date of this Opinion, Defendant has not supplemented its Motion to include a copy of the 61st Plan. However, Plaintiff does not oppose Defendant's assertion that C.A.'s health benefit plan is also governed by ERISA (*see generally* ECF No. 24); therefore the Court deems this fact as admitted. *See Iwanicki v. Bay State Mill. Co.*, Civ. A. No. 11-1792, 2012 WL 4442643, at *5 (D.N.J. Sept. 21, 2012) (granting motion to dismiss and finding plaintiff abandoned claims when the plaintiff did "not respond to the arguments" in defendant's moving brief or offer support for plaintiff's position); *see also Totalogistix, Inc. v. Marjack Co., Inc.*, Civ. A. No. 06-5117, 2007 WL 2705152, at *3 (D.N.J. Sept. 14, 2007)

Prior to the procedures, Plaintiff alleges Defendant "agreed to grant" Plaintiff "gap exceptions"[2] to treat the Patients and cover the surgeries performed "out-of-network" at the "in-network" benefit level. (ECF No. 11 ¶¶ 15, 24, 32, 40.) The gap exceptions were issued by letters (collectively, the "Gap Exception Letters")[3] on: April 24, 2019 for C.S. (*id.* ¶ 15; Fairley Decl. Ex. 2)[4]; December 1, 2021 for D.S. (ECF No. 11 ¶ 24; Fairley Decl. Ex. 4); April 14, 2021 for C.A. (ECF No. 11 ¶ 32; Fairley Decl. Ex. 5)[5]; and October 13, 2020 for K.M. (ECF No. 11 ¶ 40; Fairley Decl. Ex. 7). The Gap Exception Letters were each addressed to the respective Patient and also copied Dr. Collin Failey, M.D. ("Dr. Failey") as well as various other nonparties. (Fairley Decl. Exs. 2, 4, 5, 7.) The Gap Exception Letters issued to C.S. and K.M. state "approval does not guarantee that the plan will pay for the service." (Fairley Decl. Exs. 2, 7.) Additionally, the

---

(granting motion to dismiss and finding that plaintiff "dropped" or "conceded" his claim by offering no defense in its opposition papers).

[2] A "gap exception" is when an insurance carrier makes an agreement to cover an "out-of-network provider" at the "in-network" benefit level because there are no doctors or healthcare providers in the area to provide the needed services. (ECF No. 11 ¶ 16.)

[3] Although Plaintiff does not specify whether the agreements were oral or written (*see generally id.*), the Court may consider the gap exception letters because they are integral to the Second Amended Complaint. *See Burlington Coat Factory*, 114 F.3d at 1426; *see also Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. A. No. 21-17221, 2022 WL 1718052, at *3 (D.N.J. May 27, 2022) (considering pre-authorization letter from the defendant-insurer to the plaintiff-health provider where defendant-insurer attached the pre-authorization letter to its motion to dismiss).

[4] Defendant asserts the network exception letter sent to C.S. was actually dated April 25, 2019. (ECF No. 22-12 at 4 n.1; Fairley Decl. ¶ 5, Ex. 2.)

[5] Defendant asserts it sent C.A. a letter *denying* her request for a gap exception ("C.A.'s Denial Letter") which was dated April 19, 2021. (ECF No. 22-12 at 4 n.1; Fairley Decl. ¶ 10, Ex. 5.) In its opposition brief, Plaintiff does not dispute this distinction made by Defendant. (*See generally* ECF No. 24.) To the extent C.A.'s Denial Letter contradicts the Second Amended Complaint's factual allegations, the document itself will control. *LA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

aforementioned letters provide that any payment is subject to: "[t]he services the health plan covers"; "[t]he guidelines and policies in place when services were provided"; and Defendant's "reimbursement policies." (*Id.*) The Gap Exception Letter issued to D.S. provides: "[t]his approval does not guarantee that the plan will pay for the service. Other plan rules apply to the claims payment."; "Coverage for these services is subject to the terms and conditions of your health benefit plan including exclusions, limitation, conditions, and patient eligibility."; and "Your provider is out-of-network. Out-of-network providers sometimes bill members for more than they receive from the member's cost share . . . and the amount we paid them." (Fairley Decl. Ex. 4.) C.A.'s Denial Letter states "the health services will not be covered at the network level because our clinical staff found providers in your network area that can provide this care." (Fairley Decl. Ex. 5.) C.A.'s Denial Letter further provides payment is based on: "[t]he services your health plan covers"; "[t]he guidelines and policies in place when services were provided"; and Defendant's "reimbursement policies." (*Id.*)

Plaintiff performed surgery on: C.S. on May 7, 2019 and May 10, 2019 (ECF No. 11 ¶¶ 12, 17); D.S. on December 6, 2021 (*id.* ¶¶ 22, 25); C.A. on April 20, 2021 (*id.* ¶¶ 30, 33); and K.M. on November 2, 2020 (*id.* ¶¶ 38, 41). Plaintiff billed Defendant in the amount of $513,290.00 for the medical services rendered to the Patients. (*Id.* ¶¶ 20, 28, 36, 44.) Defendant paid $34,017.56 on the claims; $479,272.04 remains outstanding.[6] (*Id.* ¶¶ 21, 29, 37, 45, 84, 92.) Plaintiff alleges it relied upon Defendant's purported representations—to cover the Patients at the "in-network" benefit level—to its detriment by providing medical services to the Patients. (*Id.* ¶¶ 17, 25, 33, 41.)

---

[6] Plaintiff appears to miscalculate the amount outstanding for D.S.'s procedure resulting in an incorrect calculation of the total amount outstanding. (*See id.* ¶¶ 27–29, 64–66.) The correct calculation based off the allegations should be $479,272.44. Accepting the allegations as true, the Court provides the apparent miscalculation as well.

### B.    Procedural History

On March 10, 2023, Plaintiff filed a Complaint against Defendant in the Superior Court of the State of New Jersey, Morris County, Law Division. (ECF No. 1-1.) On April 12, 2023, Defendant removed the matter to this Court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(b). (ECF No. 1.) On May 9, 2023, Plaintiff filed a First Amended Complaint. (ECF No. 7.) On June 2, 2023, Plaintiff filed a three-count Second Amended Complaint alleging state law claims for breach of contract (Count One), unjust enrichment (Count Two),[7] and promissory estoppel (Count Three).[8] (ECF No. 11.)

The Honorable Michael A. Hammer, U.S.M.J., entered three orders extending the time for Defendant to answer, move, or otherwise respond to the Second Amended Complaint. (ECF Nos. 13, 15, 19.) On August 7, 2023, Defendant filed a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22.) On September 7, 2023, Plaintiff filed an opposition. (ECF No. 24.) On September 29, 2023, Defendant filed a reply. (ECF No. 25.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

---

[7] In its opposition brief, Plaintiff "agree[d] to voluntarily dismiss" its unjust enrichment claim (Count Two). (ECF No. 24 at 1.) Accordingly, the Court does not address this claim herein.

[8] The Second Amended Complaint, as well as its earlier iterations, also named fictitious parties "John Doe (1–10)" and "XYZ Corp. (1–10)" as Defendants.

omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

6

'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

## III. DECISION

Defendant asserts the Second Amended Complaint must be dismissed with prejudice because Plaintiff's state law causes of action are expressly preempted by ERISA. (ECF No. 22-12 at 10–16.) Defendant also contends Plaintiff's state law claims fail as a matter of law. (*Id.* at 17–27.)

### A. ERISA Preemption

Defendant asserts Plaintiff's state law causes of action are an impermissible attempt to add to the exclusive list of remedies available under ERISA. (*Id.* at 10.) Defendant argues state laws that interfere with ERISA's exclusive civil enforcement scheme and provide alternate remedies are preempted by ERISA. (*Id.* at 11–12.) Defendant asserts the Gap Exception Letters did not

create an actionable contract with Plaintiff, separate from the ERISA-governed Plans, because the Gap Exception Letters: (1) were addressed to the Patients and copied to various non-parties; (2) do not mention Plaintiff; (3) were not sent to Plaintiff; (4) merely inform the Patients whether the out-of-network services would be covered under the Plans at the in-network level; (5) do not include a promise to pay Plaintiff or any other medical service provider; and (6) include explicit disclaimers. (*Id.* at 13–14.) Defendant contends Plaintiff's state law claims are expressly preempted because "the only way to determine whether Plaintiff's claims were properly administered under the terms of the respective Plans is to review each of the ERISA Plans and confirm that benefits were paid in accordance with those terms." (*Id.* at 14.) Further, Defendant asserts "[a] process set forth in an ERISA plan (such as a [p]lan's network exception process) does not create an independent legal duty, apart from the obligations of the [p]lan itself, because it is expressly required by the terms of the [p]lan." (*Id.* at 15.)

In opposition, Plaintiff asserts its state law causes of action are explicitly not preempted by ERISA. (ECF No. 24 at 7–9.) Plaintiff contends: "[i]t is well settled law in the 3rd Circuit that state law causes of action for breach of contract and promissory estoppel are not preempted by ERISA when an insurance carrier makes an agreement with an 'out of network' provider to cover its insureds at the 'in-network' benefits level." (*Id.* at 7 (citing *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020).) Plaintiff summarizes the *Plastic Surgery Center* case and places complete reliance upon this Third Circuit decision as the basis for why its state law causes of action are not preempted. (*Id.* at 7–9 (citing *Plastic Surgery Ctr.*, 967 F.3d 218).) Additionally, Plaintiff argues Defendant's assertions—that Plaintiff was not sent the Gap Exception Letters and that Plaintiff was not a party to the agreement established by the Gap Exception Letters—are misplaced because Dr. Failey is a principal and managing partner of The

Peer Group for Plastic Surgery, PA. (*Id.* at 17 (citing Aff. of Sarah Malaniak in Opp'n to Def.'s Mot. to Dismiss ¶ 3).)

In reply, Defendant submits "Plaintiff's Opposition does not dispute that the Patients' health benefit Plans are employee welfare benefits governed by ERISA." (ECF No. 25 at 2.) Defendant asserts the facts here are distinguishable from *Plastic Surgery Center*. (*Id.* at 2–5.) Defendant also asserts the Affidavit of Sarah Malaniak should not be considered by the Court because it includes allegations that do not appear in the Second Amended Complaint and Plaintiff cannot amend the Second Amended Complaint in its opposition to a motion to dismiss. (*Id.* at 7.)

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted "relate to" broadly, stating, "the phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (internal citation omitted). "A state law cause of action 'relates to' an employee benefits plan if, without the plan, there would be no cause of action." *Est. of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 466 (D.N.J. 2015) (internal citations omitted).

The Supreme Court has also recognized 29 U.S.C. § 1132(a) (Section 502(a) of ERISA ("§ 502(a)")) as "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399–400 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004)). Indeed, the Supreme Court articulated:

> [I]f an individual brings suit complaining of a denial of coverage for
> medical care, where the individual is entitled to such coverage only

> because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davilla*, 542 U.S. at 210.

Relying on the Supreme Court's holding, the Third Circuit established a two-prong test for determining whether a state law claim is completely preempted by ERISA. *Pascack Valley Hosp., Inc.*, 388 F.3d at 400. Specifically, a state law claim is completely preempted when: (1) a plaintiff could have brought the claim within the scope of § 502(a); and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Id.*

Section 502(a), ERISA's civil enforcement remedy, allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[9] *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)); *see also Pilot Life Ins.*, 481 U.S. at 53; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). In determining whether a claim falls within the scope of § 502(a), the Court "must examine [the] complaints, the statute on which the claims are based . . . and the various plan documents." *Davila*, 542 U.S. at 211. Significantly, to fall within the scope of § 502(a), the Third Circuit explained:

> Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within

---

[9] ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

> the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action.

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (citing *Pegram v. Herdrich*, 530 U.S. 211, 228 (2000)).

Once determined whether a plaintiff's claim falls within the scope of § 502(a), a state law claim is completely preempted by ERISA if no other independent legal duty exists. *See N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 303 (3d Cir. 2014) ("Because the [*Pascack*] test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied."). A court finds "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *Id.* (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). Accordingly, "if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (quoting *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

The cruxes of Plaintiff's claims are that the Patients are participants/beneficiaries of the ERISA-governed Plans, Defendant issued gap exceptions for the Patients' surgeries performed at Plaintiff's facilities, and Defendant then agreed to cover the Patients for these surgeries at the "in-network" benefit level pursuant to the Plans despite Plaintiff being an out-of-network provider. As such, Plaintiffs' claims for breach of contract (Count One) and promissory estoppel (Count Three) are subject to preemption because the claims challenge the administration of benefits, *Pryzbowski*, 245 F.3d at 273, and because the claims could have been brought under the scope of ERISA, *Pascack Valley Hosp., Inc.*, 388 F.3d at 400.

11

The Court also finds Plaintiff has failed to sufficiently plead that an independent legal duty exists. The Gap Exception Letters inform the Patients that surgeries conducted by out-of-network providers would be covered at the "in-network" benefit level subject to the Plans. It is impossible to determine the merits of Plaintiffs' claims without examining the provisions of their ERISA-governed Plans. *See Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 17-07534, 2018 WL 2441770, at 6 (D.N.J. May 31, 2018) (finding preemption where pre-authorization agreement "contain[ed] no reimbursement rate or any other provision dictating payment terms" thus the court could "only resolve [plaintiff's] claims by interpreting the [health benefit plan], not any independent contract, and [plaintiff's] right to recovery, if it exists, depends entirely on the terms and provisions of the [health benefit plan], which sets forth the reimbursement rate for out-of-network providers such as in this case"); *see also E. Coast Advanced Plastic Surgery v. Aetna Inc.*, Civ. A. No. 18-9429, 2019 WL 2223942, at *3 (D.N.J. May 23, 2019) (finding ERISA preempts state law claims where the court "would be required [to] reference [the ERISA-governed] plan to decide any of Plaintiff's state law claims").

Furthermore, an ERISA-governed plan's network-exception process does not automatically create an independent legal duty, apart from the obligations of the ERISA-governed plan itself. *See BrainBuilders, LLC v. Aetna Life Ins. Co.*, Civ. A. No. 17-03626, 2024 WL 358152, at *11 (D.N.J. Jan. 31, 2024) ("Where a complaint suggests that the out-of-network provider is seeking payment pursuant to an ERISA-governed plan or where the alleged source of the independent obligation stems from a member's ERISA-governed plan, district courts find common law claims to be preempted."); *see also Atl. Spinal Care v. Aetna*, Civ. A. No. 12-6759, 2014 WL 1293246, at *6 (D.N.J. Mar. 31, 2014) (finding state law claim for breach of contract was expressly preempted by ERISA because they deal with "the calculation and payment of the benefit due and

requires the existence of the plan and reference to its terms") (internal citation and quotation marks omitted); *Ford v. Unum Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) (affirming dismissal of claims of breach of contract, negligence, and intentional infliction of emotional distress and noting state law claims will "ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan").

Plaintiff's reliance on the *Plastic Surgery Center* case as the sole basis for why its state law claims should not be preempted is misguided. In *Plastic Surgery Center*, the Third Circuit held that the healthcare provider's state law causes of action were not expressly preempted by ERISA because the healthcare provider had sufficiently alleged the existence of an agreement independent of the patient's ERISA-governed health benefit plan. 967 F.3d at 230–39.[10] The healthcare provider and the insurer had entered into an oral agreement for payment of a "reasonable amount" that was separate from the ERISA-governed health benefit plan and not reduced to writing, *id.* at 223–24, whereas here, the purported independent agreements, the Gap Exception Letters, were reduced to writing and explicitly reference the Plans. Unlike the healthcare provider in *Plastic Surgery Center*, Plaintiff alleges the separate, actionable agreements included representations that Plaintiff would be paid at the in-network level. *See id.* at 232 (noting the healthcare provider did not allege that "it agreed to be paid as if it were an in-network provider" bound by the terms and conditions of the subject health benefit plan). The Gap Exception Letters do not include an agreed-upon rate of payment but instead provide that it is not guaranteed that the Plans will pay for the surgeries and that payment will be based on the terms of the Plans and Defendant's reimbursement

---

[10] However, the Third Circuit noted its decision does not "suggest that out-of-network providers are categorically exempt from section 514(a), with carte blanche to file suit for services rendered to plan participants. . . . Whether any agreement was reached with a provider, and the extent to which the terms of that agreement are so intertwined with the plan as to 'relate to' an ERISA plan, are questions that depend upon the facts and circumstances of each case." *Id*. at 232 n.16.

policies. *See Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, Civ. A. No. 18-13874, 2019 WL 2498925, at *4 (D.N.J. June 17, 2019) (finding preemption where the state law claims relied on a written pre-authorization, which expressly stated that it did not guarantee payment and made payment contingent on the terms of an ERISA plan); *see also Glastein v. Horizon Blue Cross Blue Shield of Am.*, Civ. A. No. 17-7983, 2018 WL 3849904, at *3 (D.N.J. Aug. 13, 2018) (finding plaintiff's state law claims were expressly preempted by ERISA when the written pre-authorization at issue "explicitly state[d] that it is not a guarantee of payment [and] is subject to the terms of the benefit plan"); *Advanced Orthopedics*, 2022 WL 1718052, at *8 (distinguishing *Plastic Surgery Ctr.* and explaining the healthcare provider's claims "arise not from a freestanding agreement" with the insurer, "but flow from the insured's plan which provides coverage for services provided by out-of-network providers. Plaintiff has not alleged an 'ad hoc arrangement[] in which the provider agrees to render services (which are *not* covered by the terms of the plan).'") (quoting *Plastic Surgery Ctr.*, 967 F.3d at 229); *BrainBuilders*, 2024 WL 358152, at *12 (distinguishing *Plastic Surgery Center* and finding "the allegations strongly suggest that [the healthcare provider's] state law claims arise not from a freestanding agreement reached with the insurer, but from the ERISA plans' coverage for out-of-network services").

Based on the foregoing, the Court finds that Plaintiff's state law claims as pled are preempted by ERISA. Accordingly, Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED** and the Second Amended Complaint (ECF No. 11) is **DISMISSED WITHOUT PREJUDICE**. Because the Court finds Plaintiff's state law claims are preempted by ERISA, it need not analyze the merits of Plaintiffs' claims for breach of contract (Count One) and promissory estoppel (Count Three).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 22) is **GRANTED**, and Plaintiff's Second Amended Complaint (ECF No. 11) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may, within thirty (30) days of the date of this Opinion, file a third amended complaint curing the deficiencies addressed herein. Defendant may respond to the third amended complaint, if filed, as appropriate and consistent with applicable federal and local rules.[11] An appropriate Order follows.

/s/ Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2024

---

[11] Plaintiff requested leave to amend the Second Amended Complaint. (ECF No. 24 at 18–19.) Defendant asserts Plaintiff's request should be denied because amendment would be futile, and Plaintiff has not identified the grounds on which it will amend the Second Amended Complaint. (ECF No. 25 at 11–12.) Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); *see also Sabatino v. Union Twp.*, Civ. A. No. 11-1656, 2013 WL 1622306, at *6 (D.N.J. Apr. 15, 2013) (internal citation omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to tests its claims on the merits"). Given that this is the first motion to dismiss the Court has addressed and Plaintiff alleges $479,272.04 in damages, the Court will grant Plaintiff's request for leave to amend. *Habayeb v. Butler*, Civ. A. No. 15-5107, 2016 WL 1242763, at *8 (D.N.J. Mar. 29, 2016) (granting plaintiff leave to amend complaint on counts dismissed without prejudice without separate motion to amend under Fed. R. Civ. P. 15(a)(2)). The Court notes Plaintiff is *not* barred from amending and reasserting state law claims. As the Court sees it, Plaintiff has (but is not limited to) two options: (1) restyle its claims as ERISA claims; or (2) amend the Second Amended Complaint so that the state law claims are not preempted by alleging an independent legal duty separate from the Plans.