**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHRYN MURRAY,<br><br>              Plaintiff,<br><br>        v.<br><br>UNITED HEALTHCARE SERVICES, INC., *et al.*,<br><br>              Defendant. | Case No. 2:23-cv-02073 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

    Before the Court is a Motion to Dismiss Plaintiff Kathryn Murray's ("Plaintiff") Third Amended Complaint ("TAC") (ECF No. 30) filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant United Healthcare Services, Inc. ("Defendant"). (ECF No. 38-8.) Plaintiff filed an opposition (ECF No. 42), and Defendant filed a reply (ECF No. 47). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 38-8) is **GRANTED**.

**I.      BACKGROUND**[1]

    **A.      Factual Background**

    For purposes of the motion to dismiss, the Court accepts the factual allegations in the TAC (ECF No. 30) as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips*

---

[1] The Court writes for the parties and assumes familiarity of the facts. Accordingly, in the interest of judicial economy, the Court includes only the facts and procedural background relevant to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint.

*v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

This matter arises from Defendant's alleged breach of agreements it allegedly made with Plaintiff to reimburse her or her medical provider for certain surgical procedures. (*See* ECF No. 30 ¶¶ 5–6.) Defendant is an insurance provider that insured Plaintiff at all relevant times. (*See id.* ¶¶ 2–3, 7.) Plaintiff is an individual residing in New Jersey who "underwent two [] medically necessary, reasonable, and valuable breast reconstruction surgeries . . . on October 29, 2019 and November []2, 2020." (*Id.* ¶¶ 1, 5–6.)

Plaintiff alleges Defendant "made clear and definite promises to Plaintiff to grant her a 'gap exception' to receive her surgeries . . . and to cover her breast reconstruction surgeries at the 'in-network' benefit level [b]ecause Defendant did not have physicians in its network in Plaintiff's geographic area who could perform the medically necessary surgeries."[2] (*Id.* ¶¶ 8, 24, 26.) Plaintiff contends that she understood this agreement "to mean that she would only be financially liable for her 'in-network' level of cost sharing . . . and would not owe any monies in excess of those amounts to her medical provider." (*Id.* ¶¶ 8, 28.) Plaintiff alleges it was "[i]n reliance on th[ose] foregoing promises" that she underwent her October 29, 2019 and November 2, 2020 surgeries, expecting Defendant to cover the procedures "at the 'in-network' benefit level." (*See id.* ¶ 9.)

---

[2] A "gap exception" is when an insurance carrier makes an agreement to cover an "out-of-network provider" at the "in-network" benefit level because there are no doctors or healthcare providers in the area to provide the needed services. (*See* ECF No. 11 ¶ 16; ECF No. 30 ¶ 25.) Because the gap exception letters are integral to the TAC, the Court may consider them when evaluating Defendant's Motion to Dismiss Plaintiff's TAC. *See Burlington Coat Factory*, 114 F.3d at 1426; *see also Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. A. No. 21-17221, 2022 WL 1718052, at *3 (D.N.J. May 27, 2022) (considering pre-authorization letter from the defendant-insurer to the plaintiff-health provider where defendant-insurer attached the pre-authorization letter to its motion to dismiss).

According to Plaintiff, "on or about March 20, 2020 and November 15, 2020 . . . claim form(s) were prepared and sent to Defendant for reimbursement" of the two surgeries. (*Id.* ¶¶ 10, 30.) Sometime thereafter, Defendant provided an "explanation of benefits and payment" to Plaintiff's medical provider, "in the amount(s) of $6,552.48 and $6,504.74 respectively." (*Id.* ¶¶ 11, 31.) This payment was allegedly "improper," leaving Plaintiff with a "balance due of $143,495.26 and $18,444.52 respectively with regard to the surgeries she received [on] October 29, 2019 and November 2, 2020[.]" (*Id.* ¶¶ 13, 33–34.) Plaintiff contends this insufficient payment directly "violat[es] . . . Defendant's promise to have [Plaintiff's] personal liability limited to her 'in network' benefit level of cost sharing." (*Id.* ¶ 14.) Plaintiff further alleges the outstanding balances are "unconscionable." (*Id.* ¶¶ 14, 29, 36.) Given these circumstances, Plaintiff brings this action "pursuant to E.R.I.S.A. Section 502(a)(1)(b)" to enforce a plan benefit.[3] (*Id.* ¶ 16.)

### B. Procedural History

On March 28, 2024, this Court granted (ECF No. 28) Defendant's Motion to Dismiss (ECF No. 22) Plaintiff's Second Amended Complaint (ECF No. 11). On April 27, 2024, Plaintiff filed a two-count TAC alleging "an action to enforce a plan benefit pursuant to 29 U.S.C. § 1132" (Count One)[4] and promissory estoppel (Count Two).[5] (*See* ECF No. 30 at 5, 10.) On July 10, 2024, Defendant filed a Motion to Dismiss Plaintiff's TAC. (ECF No. 38-8.) On August 20, 2024,

---

[3] Plaintiff also brought this action "for promissory estoppel" (*id.* ¶ 16), but later "agree[d] to voluntarily withdraw the Promissory Estoppel cause of action contained in the TAC." (ECF No. 42 at 17.). Accordingly, the Court does not address this claim herein.

[4] ERISA § 502(a)(1)(b) is codified at 29 U.S.C. § 1132.

[5] As noted, in her opposition (ECF No. 42) to Defendant's Motion to Dismiss Plaintiff's TAC (ECF No. 38-8), Plaintiff agreed to voluntarily withdraw Count Two. (*See* ECF No. 42 at 17.)

Plaintiff filed an opposition. (ECF No. 42.) On September 24, 2024, Defendant filed a reply. (ECF No. 47.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include

"factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (citation omitted). However, "[w]hen the truth of facts in an 'integral' document

are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.   DECISION

Defendant asserts the TAC must be dismissed with prejudice because Plaintiff "fails to allege facts sufficient to demonstrate that she exhausted all of the administrative remedies available[.]" (*See* ECF No. 38-8 at 21.) Defendant also contends the TAC must be dismissed because Plaintiff's fails to tie her claim for benefits pursuant to 29 U.S.C. § 1132 to any plan term. (*See id.* at 16.) The Court will address each argument in turn.

#### A.   Exhaustion of Administrative Remedies

Defendant asserts Plaintiff failed to "allege facts describing the administrative remedies (if any) that she exhausted or the manner in which she exhausted them." (ECF No. 38-8 at 20.) Defendant further argues the "TAC does not allege facts describing . . . [Plaintiff's] specific attempts to administratively appeal the purported denials of benefits generally referenced in the [c]omplaint." (*Id.* at 20–21.)

In opposition, Plaintiff argues the so-called "Futility of Exhaustion Doctrine" excuses her failure to "exhaust[] administrative remedies if doing so would be futile." (ECF No. 42 at 16.) Plaintiff also asserts Defendant "fail[ed] to comply with ERISA § 503's notice requirements[,]" which also excuses her "from exhausting administrative remedies[.]" (*Id.* at 16–17.) In particular, Plaintiff notes the gap exception letter "dated October 28, 2019 gave no notice of an appeal requirement or time frame to bringing a civil action."[6] (*Id.* at 17.)

---

[6] Plaintiff further argues an explanation of benefits "dated March 26, 2020 [was] sent directly to" her healthcare provider but not her, thereby failing to "afford her the proper notice as required under 29 U.S.C. § 1133[.]" (*See* ECF No. 42 at 17.) However, Defendant is correct to note that this document was "not mentioned in the TAC" and nor did Plaintiff "submit any evidence supporting her allegations related to" this March 26, 2020 explanation of benefits. (*See* ECF No.

6

In reply, Defendant submits Plaintiff "attempts to amend her TAC by improperly alleging for the first time in [o]pposition that she was not required to exhaust the administrative remedies under the [p]lan based on 'the futility of exhaustion doctrine.'" (ECF No. 47 at 11.) Defendant also asserts that the "October 28, 2019 gap exception letter . . . [was not an] 'adverse benefit determination[]'" because it was "not a denial, reduction, or termination of, or failure to provide or make payment . . . [and] instead[] it merely inform[ed] Plaintiff of the outcome of her request for a . . . gap exception[.]" (ECF No. 13.) Because the October 28, 2019 letter was not an adverse benefit determination, it is therefore, according to Defendant, not "subject to the requirements of 29 U.S.C. § 1133," which establishes ERISA's "notice regulations[.]" (*See id.* at 12–13.)

Except in limited circumstances, "a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2022) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990)). Because "exhaustion of remedies" is considered an affirmative defense, the defendant bears the burden of proving a failure to exhaust. *Rizzo v. First Reliance Standard Life Ins. Co.*, 417 F. Supp. 3d 479, 485–86 (D.N.J. Oct. 23, 2019). The exhaustion requirement does not apply where: (1) the administrative procedure provided for by the plan would be futile; (2) the claimant has been denied meaningful access to the plan's claim procedure; or (3) where a plan expressly requires exhaustion but fails to follow claims procedures consistent with the applicable ERISA regulatory requirements. *Id.* at 486. Where a claimant fails to exhaust the review procedures provided by an ERISA plan, or meet the outlined exceptions, dismissal may be appropriate. *Id.* (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2022)). However, where "[i]t cannot be conclusively

---

42 at 12.) Accordingly, because this document is neither integral to nor explicitly relied upon in the TAC, the Court will not consider it when evaluating the permissibility of Plaintiff's failure to exhaust administrative remedies. *Cf. In re Burlington Coat Factory*, 1143 F.3d at 1426.

established from the complaint whether [the plaintiff] failed to adequately pursue [his] administrative remedies or whether it would have been futile for [him] to have done so," dismissal is not appropriate. *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015). Further, while this exhaustion of remedies rule is "important," it should also be noted "it is a judicial innovation fashioned with an eye toward 'sound policy'" and nowhere does "ERISA . . . mention[] the exhaustion doctrine." *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir 2007). Accordingly, "as a judicially-crafted doctrine, exhaustion places no limits on a court's adjudicatory power." *See id.*

Plaintiff's TAC does not address whether—and, if so, how—she exhausted administrative remedies available under the plan. To the extent Plaintiff's opposition addresses Defendant's reply on this issue, Plaintiff seems to concede, or at least acknowledge, the TAC's silence in this regard. To that end, the Court will not consider the additional factual allegations contained in Plaintiff's opposition (*see* ECF No. 42 at 16–17) because "[i]t is axiomatic that the complaint [] not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, it is too late for Plaintiff to address and assert a defense—that is, the futility of exhaustion doctrine—wholly absent from the TAC. To hold otherwise would not only prejudice Defendant, but also impermissibly amend the TAC.

However, the burden rests with Defendant, not Plaintiff, to show failure to exhaust administrative remedies. *See Rizzo*, 417 F. Supp. 3d at 485–86. In its reply, Defendant for its part does not address the relevant remedies available under the plan that Plaintiff, in turn, should have exhausted before bringing this suit. (*See generally* ECF No. 38.) Defendant therefore fails to carry its burden on this issue. Given this, the fact that failure to exhaust is "not generally the basis for dismissal under Rule 12(b)(6)," *see Am. Chiropractic Ass'n*, 625 F. App'x at 173 n.5, and that

8

"[t]he exhaustion requirement is a nonjurisdictional affirmative defense," *see Price*, 501 F.3d at 280, this Court will not dismiss Plaintiff's TAC for failure to exhaust her administrative remedies at this time. Accordingly, Defendant's arguments for dismissal under this theory are rejected.

### B. Sufficiency of Link Between Claim for Benefits and Plan Terms

Defendant asserts Plaintiff failed to "point to any plan provision requiring [Defendant] . . . pay her physician's billed charges." (*Id.* at 16.) Accordingly, Defendant argues, Plaintiff's allegations "are insufficient as a matter of law to state a claim for the wrongful denial/underpayment of benefits pursuant to ERISA §502(a)(1)(B)." (*Id.* at 16–17.) In the alternate, Defendant contends Plaintiff also failed to "identif[y] a [p]lan provision that [Defendant] purportedly breached." (*See id.* at 18.)

In opposition, Plaintiff asserts she does "specifically tie Defendant's promises and actions to the 'in-network' benefits and cost sharing provision(s) of the [] [p]lan." (ECF No. 42 at 10.) Plaintiff claims these benefits are "fundamental and intrinsic . . . under the terms of her plan" (*id.*), but also specifically cites to terms on pages 14 and 17 of the summary plan descriptions of her health benefit plan. (*See id.* at 10–11, 12–13.) Plaintiff contends Defendant breached these plan provisions by (1) insufficiently reimbursing her for her surgeries and (2) failing to negotiate with and reimburse her healthcare provider for her surgeries. (*See id.* at 12–13.)

In reply, Defendant submits "Plaintiff impermissibly attempts to amend the TAC by adding new allegations for the first time in [o]pposition to address the deficiencies raised in Defendant's principal motion papers[.]" (ECF No. 47 at 6.) Defendant also asserts that "even if the Court were to consider Plaintiff's improper and unpled amendments . . . they fare no better than the insufficient allegations in the TAC." (*Id.*)

9

This Court has held that a claim for ERISA benefits "stands and falls by the terms of the plan." *Atl. Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *7 (D.N.J. Oct. 31, 2018) (quoting *Kennedy v. Plan Admin. For DuPont Sav. & Inv. Plan*, 555 U.S. 286 (2009)). It is a plaintiff's burden to "demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *K.S. v. Thales USA, Inc.*, No. 17-7489, 2020 WL 773166, at *4 (D.N.J. Feb. 18, 2020) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006)). In other words, in order for a plaintiff to sufficiently state a claim for relief under ERISA, the plaintiff "must identify a specific provision of the plan for which a court can infer this legally enforceable right." *Emami v. Comm. Ins. Co.*, No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021). Under similar circumstances, where a plaintiff's complaint or moving papers failed to tie the monetary claim for benefits to the plan itself, the plaintiff's complaint has been dismissed. *See K.S.*, 2020 WL 773166 at *4 ("Once again, because [plaintiff] fails to tie her claim to any provision of the [plan], the SAC cannot withstand Defendants' Motion to Dismiss."); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018) ("[B]ecause the Complaint fails to identify any specific provision in the Plan from which the Court can infer that Plaintiffs were entitled to compensation at the 'usual and customary rate' for out-of-network medical services, the Court dismisses . . . Plaintiffs' § 502(a)(1)(B) claim for failure to plead sufficient facts to state a claim for relief.").

It is unclear from the face of the TAC, or from Plaintiff's papers, what plan provisions entitle her to the full amount of $161,939.78 for the surgeries performed. Even when construing Plaintiff's complaint in the light most favorable to her, as this Court is required to do on this Motion to Dismiss, it cannot be said that Defendant's "clear and definite promises to Plaintiff to grant her

a 'gap exception'" (ECF No. 30 § 30) also included a promise to pay for Plaintiff's surgeries. Instead, the plan terms indicate Defendant will pay only "Eligible Expenses" incurred by "Covered Health Services [] received from an Out-of-Network provider as a result of an Emergency or as arranged by [Defendant.]"[7] (*See* ECF No. 42 at 11.)[8] Further, it is true that where, as here, an insured secures a gap exception for the out-of-network provider arranged by Defendant, the out-of-network provider "can perform . . . services, and [the insured's] subsequent claim with respect to those services will be processed at the In-Network benefit level . . . but [the insured] *will be responsible for any charges above Eligible Expenses*." (*Id.* at 13 (emphasis added).)

In other words, even with a gap exception letter in hand, Plaintiff was still apparently to be responsible for "any charges above Eligible Expenses" incurred as a result of her two surgeries. Because a claim for ERISA benefits "stands and falls by the terms of the plan," *Atl. Plastic & Hand Surgery*, 2018 WL 5630030, at *7, and the plan terms seem to indicate, if anything, that Plaintiff would be liable for any amount outstanding beyond "Eligible Expenses" for her two surgeries, Plaintiff fails to tie her claim for benefits pursuant to 29 U.S.C. § 1132 to any plan term. Plaintiff therefore fails to carry her burden on this issue. Accordingly, the TAC is deficient as currently pled.

---

[7] While Plaintiff provides several characterizations for her surgeries—including that they were "medically necessary," "reasonable," and "valuable" (*see* ECF No. 30 §§ 5, 6, 8, 9, 18, 23)—she does not plead that either were "emergencies." (*See generally* ECF No. 30.) This is significant because, under the plan terms, this leaves only out-of-network services "arranged by [Defendant]" as possibly eligible for reimbursement. (*See* ECF No. 42 at 11.)

[8] Because there is a strong preference in federal court that claims be decided "on the merits rather than on technicalities," *see Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted), and Plaintiff's asserted amendments in her opposition sound not in technicalities, but instead cut to the substance of the issue at bar, the Court considers them here. Further, the quoted plan terms in Plaintiff's opposition are "integral" to Plaintiff's TAC. *Cf. In re Burlington Coat Factory*, 114 F.3d at 1426.

### C. Leave to Amend

Plaintiff requests leave to amend. (ECF No. 42 at 18.) Defendant, however, requests Plaintiff's TAC be dismissed with prejudice. (ECF No. 47 at 6, 15–16.) In particular, Defendant asserts that any amendments would "be futile because Plaintiff's proposed allegations are . . . refuted by the terms of the [p]lan and governing legal authority." (ECF No. 42 at 18.) Defendant further argues that granting leave to amend would prejudice them because "Defendant has had to incur great expense litigating this case and . . . [Plaintiff's] previous four iterations of the [c]omplaint." (*Id.*)

The Federal Rules of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile." *Lovallo v. Pacira Pharms., Inc.*, Civ. A. No. 14-06172, 2015 WL 7300492, at *14 (D.N.J. Nov. 18, 2015) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)).

Here, allowing Plaintiff to amend would not be futile as she could provide additional factual content to try and cure the deficiencies in the TAC. *See Munenzon v. Peter Advisors, LLC*, 553 F. Supp. 3d 187, 210 (D.N.J. 2021); *see also United States ex rel. Petratos v. Genentech, Inc.*, Civ. A. No. 11-03691, 2014 WL 7331945, at *2 (D.N.J. Dec. 18, 2014) (stating that "within the Third Circuit, even when a complaint is vulnerable to Rule 12(b)(6) dismissal, the district court should allow the party a curative amendment, unless the amendment would be futile or inequitable").

Therefore, the Court will grant Plaintiff leave to file a fourth amended complaint.[9]

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 38) is **GRANTED**, and Plaintiff's TAC (ECF No. 30) is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

Dated: December 5, 2024

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[9] Additionally, although this is technically this Plaintiff's first complaint as a named plaintiff (see ECF No. 42 at 18), it is nevertheless the fourth complaint in this dispute. The papers currently suggest that further amendment may be futile because the gap exception letters do not appear to evidence a promise made by Defendant to Plaintiff to pay for her surgeries. Thus, in the fourth amended complaint, Plaintiff should provide additional factual content to tie her claim for benefits pursuant to 29 U.S.C. § 1132 to a plan term. However, this Court warns Plaintiff that this will be her final opportunity to state a claim against Defendant. The Court is mindful of the time and effort it has taken Defendant to respond to the allegations in this and the three former complaints (*see* ECF No. 42 at 18), and will not grant Plaintiff unlimited opportunities to state viable claims.